IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| JOHN SANT, *et al.*, | * | |
| | * | Case No.: GJH-22-1036 |
| Plaintiffs, | * | |
| v. | * | |
| MARRIOTT INTERNATIONAL, INC., *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiffs John and Jan Sant bring this civil action against Defendants Marriott International, Inc. ("Marriott") and Juhu Beach Resorts, Ltd. ("Juhu") for premises liability, negligence, and loss of spousal consortium. Pending before the Court are Defendant Marriott's Motion to Dismiss, ECF No. 18, and Defendant Juhu's Motion to Dismiss, ECF No. 26. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendant Marriott's motion is denied and Defendant Juhu's motion is granted.

**I.   BACKGROUND[1]**

Plaintiff John Sant, a Florida resident, is a commercial airline pilot for United Airlines. ECF No. 1 ¶¶ 1–2, 53. Defendant Marriott, a Delaware corporation with a principal place of business in Bethesda, Maryland, is an international operator, franchisor, and licensor of hotel, residential, and timeshare properties. *Id.* ¶¶ 8–9. Defendant Juhu is a company incorporated

---

[1] Unless stated otherwise, all facts are taken from Plaintiff's Complaint or documents attached to and relied upon in the Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

1

under the laws of India, with a registered address at the JW Marriott Hotel on Juhu Tara Road in Mumbai, India (the "Hotel"). *Id.* ¶¶ 30, 33. "JW Marriott" is one of Defendant Marriott's luxury hotel brands. *Id.* ¶ 39.

In September 2020, Plaintiff John Sant stayed at the Hotel as part of a routine layover for his work as a commercial airline pilot. *Id.* ¶ 53. On the evening of September 28, 2020, at approximately 9:50pm local time, Sant was set to depart the Hotel via a Marriott transport van. *Id.* ¶¶ 56, 61. Plaintiff alleges that the exterior lobby of the Hotel is made of dark, black marble, as is the Hotel driveway. *Id.* ¶¶ 57, 62. He further alleges there is an "unmarked, invisible, and dangerous" drop-off between the exterior lobby and the driveway. *Id.* ¶ 65. Due to the "lack of color contrast" between the two surfaces and "poor lighting in the vicinity," Plaintiff alleges that the exterior lobby and the driveway appeared to be on "one, continuous level." *Id.* ¶¶ 63–64. No signs, warnings, or reflective tape were posted to warn guests of the drop-off. *Id.* ¶ 67. As Sant proceeded from the exterior lobby to the driveway, he fell and sustained serious injury. *Id.* ¶¶ 68–73. Sant received some emergent medical services at the Mumbai airport, and upon his return to the United States, he has continued to receive medical treatment for his injuries, including a fibular avulsion fracture, along with torn ligaments and tendons. *Id.* ¶¶ 75–77. He also suffers from regional pain syndrome, which has jeopardized his medical clearance and certification as a commercial airline pilot. *Id.* ¶ 78. Additionally, Sant's wife, Jan Sant, is alleged to have suffered damages due to the impact of his injury on their marriage. *Id.* ¶ 80.

On April 27, 2022, Plaintiffs filed their Complaint. On July 5, 2022, Defendant Marriott filed its Motion to Dismiss. ECF No. 18. Plaintiffs responded, ECF No. 22, and Defendant

replied, ECF No. 24. On September 19, 2022, Defendant Juhu filed its Motion to Dismiss. ECF No. 26. Plaintiffs responded, ECF No. 30, and Defendant replied, ECF No. 32.[2]

## II. DISCUSSION

### A. *Forum Non Conveniens*

Defendants Marriott and Juhu each bring motions to dismiss against Plaintiff on the grounds of *forum non conveniens*, arguing that the case should properly be heard in India. ECF No. 18-1 at 4–14; ECF No. 26 at 6–7.[3]

Plaintiffs argue that their choice of forum should be afforded substantial deference and that this Court provides a superior forum where the issues can be resolved in an appropriate and timely manner. ECF No. 22 at 8–21.

Federal courts may dismiss a case under the common law doctrine of *forum non conveniens* if convenience requires the matter to be litigated in an alternative forum in a foreign nation. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). In the Fourth Circuit, the moving party must show the "alternative forum is: 1) available; 2) adequate; and 3) more convenient in light of the public and private interests." *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)). The defendant "bears the burden" of making this showing. *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 800 (4th Cir. 2013) (citing *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010)).

---

[2] Plaintiffs' Unopposed Motion for Leave to Exceed Page Limit, ECF No. 21, and Defendant Juhu's Consent Motion for Extension of Time, ECF No. 31, are both hereby granted.

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Here, Defendants argue that India, where Plaintiff John Sant's fall occurred, is an available and adequate forum, and that Marriott is amendable to making itself available in India to resolve the matter, if necessary. ECF No. 18-1 at 4–8.[4] Defendant Marriott provides in support of its contentions the affidavit of M.B. Raghavan, an attorney practicing in India, who explains that tort claims such as the one here are viable in Indian courts and may be brought by "alien friends" as if they were citizens of India. *Id.* at 5–6; *see* ECF No. 18-5. Raghavan describes the process by which Plaintiffs would bring their suit in the Indian courts, including the ability to engage in discovery, retain experts, consider alternative dispute resolution options, pursue collection of judgment, and file appeal. *Id.* at 7–8.

Plaintiffs respond by arguing that, while India may be an available forum, it is not adequate. Plaintiffs assert that the Indian legal system is "plagued" by a "massive backlog" of cases, meaning that it could take an estimated fifteen or twenty years to reach resolution in this matter.[5] ECF No. 22 at 9.

The Court takes seriously Plaintiffs' concerns about the ability to have their case heard in India in a timely manner. "[W]here the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative." *Piper Aircraft*, 454 U.S. at 255 n.22; *see also Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1228 (3d Cir. 1995) (finding delays in Indian courts "egregious" enough to render them "clearly inadequate" as an alternative forum). Nevertheless, while delays of such magnitude could obviate India's availability as an adequate alternative forum, the Court will assume without deciding that it is adequate, and instead weigh the convenience of the forum based on public and private interests.

---

[4] Defendant Juhu largely incorporates by reference the arguments by Marriott on the issue of *forum non conveniens*. *See* ECF No. 26-1 at 7.

[5] To support these claims, Plaintiffs rely on the affidavit of Indian attorney Kabir Hathi. *See* ECF No. 22-1.

For Marriott and Juhu to prevail, they have "the burden of showing that the private and public factors strongly favor dismissal." *Gallagher v. Marriott Int'l, Inc.*, No. 8:19-CV-2692-PWG, 2020 WL 6263188, at *4 (D. Md. Oct. 23, 2020) (citing *DiFederico*, 714 F.3d at 802). Moreover, courts have found that "a citizen plaintiff's choice of forum is entitled to even greater deference when the plaintiff chooses her 'home forum.'" *DiFederico*, 714 F.3d at 802–03. "That choice of forum is presumptively convenient and may only be overridden upon the defendant's showing of 'oppressiveness and vexation to a defendant' disproportionate to the plaintiff's convenience." *Gallagher*, 2020 WL 6263188, at *1 (quoting *DiFederico*, 714 F.3d at 803). Where, as here, the alternate forum being considered is foreign, an American citizen's "home forum" is any federal district court in the United States. *See DiFederico*, 714 F.3d at 803 n.4. Thus, Plaintiffs' choice of forum warrants significant deference in this matter.

Turning to the private interests at stake, courts consider the following factors: "the relative ease of access to sources of proof"; the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses"; the possibility of a view of the premises, if a view would be "appropriate"; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft*, 454 U.S. at 241 n.6 (citation omitted).

Here, Marriott and Juhu argue that access to the hotel premises, certain witnesses, and any relevant hotel records, will be located in India, and that, accordingly, India presents the most efficient and inexpensive forum for resolving this dispute. ECF No. 18-1 at 9–12. By contrast, Plaintiffs note that three of the four parties (the Sants and Marriott) are American citizens, and other evidence is likely to be accessible or primarily available in the United States. For instance, expert witnesses, including medical experts, are likely to be American doctors, and any records

5

available on-site at the hotel can still be viewed here. ECF No. 22 at 11–14. While Marriott raises the concern that it may not be able to compel unwilling witnesses located in India, because it purportedly has no control over the Hotel's employees, Plaintiffs also note that Marriott has not identified any specific witnesses that might be unwilling to cooperate. *Id.* at 14. Moreover, Plaintiffs charge that a jury would not need to visit the premises firsthand in order to understand the issues in this case. *Id.* at 14. Finally, Plaintiffs would likely face considerable expense traveling to India to actively participate in a foreign lawsuit. *Id.* at 15.

With respect to the public interests at stake, the relevant factors include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft*, 454 U.S. at 241 n.6 (citation omitted).

Here, Marriott and Juhu emphasize the challenges of applying Indian law in this Court and the local interest India maintains in assessing liability in disputes such as this. ECF No. 18-1 at 13–14. Plaintiffs note, however, that any administrative difficulties of proceeding here are outweighed by those of proceeding in India, and that American citizens have a strong interest in having a case against an American corporation, the Marriott brand, decided at home. ECF No. 22 at 17–18.

In assessing the private and public factors, the "ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Sund v. Marriott Int'l, Inc.*, No. CV TDC-19-2806, 2020 WL 2085469, at *10 (D. Md. Apr. 30, 2020) (quoting *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947)). Here, the Court finds, having considered

all of the factors, that while certain private factors may favor the forum in India, there are sufficient sources of proof available here, or able to be transmitted here, to make a trial in the present forum fully viable. Other private factors, including the expense Plaintiffs would have to incur traveling to and litigating in India, also favor keeping the case in this Court. Moreover, "Federal Courts are 'quite capable' of deciding foreign law issues," including under Indian law, and such issues "are reviewable as a factual matter on appeal." *Gallagher*, 2020 WL 6263188, at *6 (citing *DiFederico*, 714 F.3d at 807). Additionally, "to the extent that Americans recognize and utilize the Marriott brand, Americans have a localized interest in resolving a dispute related to Marriott." *DiFederico*, 714 F.3d 796, 807 (4th Cir. 2013); *see also Sund*, 2020 WL 2085469, at *10 ("Where this case involves two American parties in the defendant's home forum, the public factors weigh in favor of the present forum.").

Accordingly, the Court does not find that Defendants have overcome the substantial deference afforded to a plaintiff's choice of home forum, and Defendants' motions to dismiss on the basis of *forum non conveniens* are denied.

### B. Failure to State a Claim

Marriott also brings against a motion to dismiss for failure to state a claim. ECF No. 18-1 at 15–16. Plaintiffs argue that they have made allegations that are legally and factually sufficient to withstand dismissal at this stage. ECF No. 22 at 24–27.

On a motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville, Md.*, 891 F.3d 141, 145 (4th Cir. 2018) (citation omitted). To overcome a 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The mere recitation of "elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). Nor must the Court accept unsupported legal allegations. *Revene v. Charles Cnty. Commis.*, 882 F.2d 870, 873 (4th Cir. 1989). A plausibility determination is a "context-specific inquiry" that relies on the court's "experience and common sense." *Iqbal*, 556 U.S. at 679.

Here, Marriott argues that Plaintiffs have failed to state a claim against it because it has no direct or indirect ownership interest in the hotel and has never been a parent company to Juhu, nor has Juhu ever been a subsidiary of it.[6] ECF No. 18 at 16.

In response, Plaintiffs charge that corporate ownership is just one means through which a duty of care may arise, and that Marriott may still otherwise maintain control over its franchisees and hotels carrying its brand—claims that will be borne out with discovery. ECF No. 22 at 25–27. As such, Plaintiffs argue that all of its causes of action against Marriott should stand.

Ultimately, the Court finds that Plaintiffs have met the burdens set forth under the *Twombly/Iqbal* standard, as the claims contain more than threadbare allegations. Moreover, "[s]hould discovery show otherwise, then this issue appropriately may be raised by Marriott on summary judgment." *Gallagher*, 2020 WL 6263188, at *7. Indeed, at that time, the Court will be better positioned to assess the degree of control Marriott International maintains over the Hotel and the potential for liability. *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 883–84

---

[6] Marriott provides two affidavits, submitted as exhibits, to support these assertions. *See* ECF No. 18-3; ECF No. 18-4. However, when a party submits outside materials beyond the pleadings on a motion to dismiss, the court has "complete discretion to determine whether or not to accept the submission … and rely on it, thereby converting the motion [to one for summary judgment], or to reject it or simply not consider it." *Stone v. Trump*, 400 F. Supp. 3d 317, 349 (D. Md. 2019) (quoting *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013)). Here, the Court will disregard the affidavits at this time.

(D. Md. 2016) (granting summary judgment for Marriott International in a slip-and-fall action involving a Panama franchisee).

As such, the Court will deny Defendant Marriott's motion to dismiss for failure to state a claim.

### C. Lack of Personal Jurisdiction

Defendant Juhu submits that this Court does not have personal jurisdiction over it because the company does not conduct any business in the State of Maryland, and because the suit lacks a connection to any Maryland-based activity performed by Juhu. ECF No. 26-1 at 10–13.

Plaintiffs assert that personal jurisdiction exists as a result of Juhu's franchise relationship with Defendant Marriott and any contracts or negotiations that may have occurred relating to United Airlines' pilot and crew reservations at the Hotel. ECF No. 30 at 14–16.

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show that: (1) the exercise of jurisdiction is authorized under the state's long-arm statute; and (2) the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Maryland's long-arm statute provides that courts may exercise personal jurisdiction over a party who "[t]ransacts any business or performs any character of work or service in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). Courts may also find jurisdiction over a party who causes tortious injury by act or omission outside the state if the party "engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." *Id.* § 6-103(b)(4).

Courts in Maryland have "consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution," and thus, the "statutory inquiry merges with [the] constitutional inquiry." *Carefirst*, 334 F.3d at 396 (citations omitted). A court's exercise of jurisdiction over a nonresident defendant meets the standards of due process if the defendant has "minimum contacts" with the forum, such that "it should reasonably anticipate being haled into court there." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)) (internal marks omitted).

If a defendant's contacts with the forum state form the basis for the suit, they may establish "specific jurisdiction." To establish specific jurisdiction, as alleged here, a plaintiff must show that: (1) the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) plaintiffs' claims arise out of those activities directed at the state; and (3) the exercise of personal jurisdiction would be constitutionally "reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003) (citations omitted).

The burden for establishing jurisdiction varies according to the posture of the case. Where, as here, "the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993)). "In deciding whether the plaintiff has made the requisite

showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst*, 334 F.3d at 396 (citing *Mylan Labs.*, 2 F.3d at 60).

As noted above, the Court first looks to whether Juhu has purposefully availed itself of the benefits of Maryland law. Courts have previously found that "a franchisee's long-term franchise agreement with [a hotel franchisor], which imposes continuing significant contractual duties upon the franchisee, *e.g.*, reporting and payment obligations, as well as [upon the franchisor], constitutes 'transacting business' under Maryland's Long–Arm statute," and thus establishes "a significant Maryland nexus." *Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 621 (D. Md. 1998).

Here, while the full extent of the relationship between Marriott and Juhu has yet to be revealed, Plaintiffs have alleged the following: Juhu maintains a franchising or licensing agreement with Marriott; pursuant to that agreement, Marriott exerts pervasive right and exercise of control over all aspects of the hotel; the Hotel website includes links to other Marriott pages, including for Marriott's customer loyalty program and its "Careers" page; the union for United Airlines contracts with various Marriott hotels, including the Hotel, on behalf of pilots and crews. ECF No. 1 ¶¶ 44–48; ECF No. 30 at 8. Further, the Court notes that affiliation with Marriott provides Juhu with access to a substantial market of American travelers that it might not otherwise reach, *Wronikowski v. Gen. Hotels Corp.*, 716 F. Supp. 5, 6 (E.D. Mich. 1989), "by virtue of the goodwill associated with [the Marriott] brand," *Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135 (1st Cir. 2021). All of this is persuasive of purposeful availment.

However, "[f]or the second element—whether a plaintiff's claims arise out of a defendant's activities directed at the state—there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum

11

State." *Wallace v. Yamaha Motors Corp, U.S.A.*, No. 19-2459, 2022 WL 61430, at *3 (4th Cir. Jan. 6, 2022) (quoting *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1781) (2017)) (internal marks omitted). The standard does not demand "a strict causal relationship" between the defendant's in-state activity and the litigation; however, "that does not mean anything goes," as the phrase "relate to" has "real limits" in order to "adequately protect defendants foreign to a forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021).

On this prong, the Court does not find that Plaintiffs have adequately met their burden in explaining how the dispute here *relates to or arises out of* Juhu's purported activity with Maryland. *See Madden v. Petland Summerville, LLC*, No. 2:20-CV-02953-DCN, 2021 WL 5770294, at *4 (D.S.C. Dec. 6, 2021) (finding duties or obligations of a franchise agreement between franchiser and franchisee did not extend to third-party plaintiffs for purpose of establishing jurisdiction); *c.f. Nandjou*, 985 F.3d at 150 (finding jurisdiction where Marriott "deliberately … cultivated business" in the forum state "by sending direct mail to [plaintiff's] home" on behalf of franchisee hotel).

The Court finds that Juhu's connection to Marriott alone is not sufficient to establish relatedness, because it is "axiomatic that the plaintiff bears the burden of establishing personal jurisdiction for each defendant individually." *Am. Ass'n of Blood Banks v. Bos. Paternity, LLC*, No. CIV.A. DKC-2008-2046, 2009 WL 2366175, at *4 (D. Md. July 28, 2009) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)); *see also Runze v. Marriott Int'l Inc.*, No. 1:19-CV-07151, 2020 WL 7027717, at *3 (N.D. Ill. Nov. 29, 2020) ("Mere affiliation between two entities does not impute one company's minimum contacts on the other."). Although Plaintiffs also suggest that the "contracts, negotiations, and bid processes"

relating to the United Airlines' pilot and crew member reservations may form some sort of Maryland nexus, the allegations are threadbare at this juncture and do not present any additional information suggesting that the claims arise out of Juhu's ties to Maryland. *See* ECF No. 30 at 16.

Plaintiffs further request the opportunity for jurisdictional discovery if the Court finds jurisdiction has not been properly established. ECF No. 30 at 18–20. However, while limited discovery may be appropriate in some cases, a district court has the discretion to deny discovery where "a plaintiff offers only speculation or conclusory assertions about contacts with a forum state." *Carefirst*, 334 F.3d at 402–03 (collecting cases). Jurisdictional discovery cannot be used as a "fishing expedition in hopes of discovering some basis of jurisdiction." *Williams v. Romarm S.A.*, 116 F. Supp. 3d 631, 643 (D. Md. 2015) (quoting *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002)). Because the allegations supporting a relation between the dispute and Juhu's purported Maryland activities appears tenuous, the Court will also deny Plaintiffs' request for jurisdictional discovery.

Thus, without more, the Court finds it must dismiss Defendant Juhu for lack of personal jurisdiction.

### III. CONCLUSION

For the foregoing reasons, Defendant Marriott's motion is denied and Defendant Juhu's motion is granted. A separate Order follows.

Date: <u>February 24, 2023</u>　　　　　　　　　　___/s/_____
　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　United States District Judge